IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| In re: | : CHAPTER 11 |
|---|---|
| U.S. ACQUISITIONS & OIL, INC., *et al.* | : NO. 09-_____ (____) |
| Debtors. | : |

## AFFIDAVIT OF NAOMI ISAACSON IN SUPPORT OF CHAPTER 11 PETITIONS AND FIRST DAY ORDERS

STATE OF WISCONSIN : 
: SS.
COUNTY OF SHAWANO :

Naomi Isaacson, being duly sworn, deposes and says:

I am the Chief Executive Officer of U.S. Acquisitions & Oil, Inc., Dr. R.C. Samanta Roy Institute of Science & Technology, Inc., Midwest Oil of Wisconsin, LLC, Midwest Oil of Shawano, LLC, Midwest Oil of Minnesota, LLC, Midwest Properties of Shawano, LLC, and Midwest Hotels & Motels of Shawano, LLC (collectively, the "Debtors"). I have been associated with the Debtors since 2000 and am familiar with the Debtors' operations, business affairs, and books and records.

The Debtors are corporations and/or limited liability companies incorporated in the State of Delaware and with a principal place of business at 1206 East Green Bay Street, Shawano, Wisconsin 54166.

The Debtors are in the business of property acquisition and management, sales of gasoline and petroleum products, and funding for charitable activities.

The Debtors have requested authority to continue to use certain of its pre-petition bank accounts and check stock as I have described below. To service its operations, the Debtors

1

maintain banking accounts that are reviewed and monitored by the Debtors' internal accounting staff. If the Debtors were required to close existing bank accounts and open new accounts, there would likely be a meaningful disruption in the Debtors' ability to collect and disburse funds in the ordinary course of its operations

The filing of the Debtors' chapter 11 petition has the potential to place a substantial strain on the Debtors' relationships with suppliers, vendors, and other creditors that are essential to the Debtors' continued operations. The delays, confusion and disruption in operations that will result if the Debtors are required to substitute new Debtor-in-possession bank accounts for all of its existing Bank Accounts as well as the various other accounts identified in the Motion would only further strain these important relationships. The Debtors believe that all parties in interest will be best served by preserving business continuity and avoiding operational and administrative paralysis that the closing of all of the bank accounts and opening of new ones may necessarily create.

Finally, the Debtors believe that they should be granted a 60-day waiver of the depository requirements of section 345 of the Bankruptcy Code, which requires the obtaining of a bond or other security for all deposits with FDIC-insured banks to the extent that the funds maintained with any given bank exceed the FDIC-insured limit of $100,000.

The Debtors' bank accounts are maintained with financially sound banking institutions. Requiring them to issue bonds in favor of the United States, as the statute requires, would cause substantial expense to the estate. In light of their financial strength, the Debtors believe such bonds are unnecessary. It is the Debtors' belief that granting this relief will facilitate a smooth and orderly transition of its operations into chapter 11 and minimize the disruption of its business affairs, without doing violence to either the policies of chapter 11 or the rules of this Court.

Debtor Dr. R.C. Samanta Roy Institute of Science & Technology, Inc., hereinafter ("SIST") was incorporated in 1992. Its mission was to bring the American system of education to the people of India and to build a school for the gifted and talented in the Midwest, ideally Wisconsin. With that vision in mind, in 2000, I was elected Chief Executive Officer. Beginning in 2000, Debtor SIST began acquiring a number of businesses. My role with the company was to oversee the business operations of the company. As more businesses and properties were acquired, for liability, tax, and financing purposes, we set up a number of wholly owned subsidiaries including the following Debtor companies: U.S. Acquisitions & Oil, Inc., Midwest Oil of Wisconsin, LLC, Midwest Oil of Shawano, LLC, Midwest Oil of Minnesota, LLC, Midwest Properties of Shawano, LLC, and Midwest Hotels & Motels of Shawano, LLC.

Due to Debtors' dynamic approach to business and Debtors' diverse business holdings, in the early years Debtors' businesses boomed and flourished. Since then, the Debtors have experienced a material degradation of its operations, resulting from intentional business interference, organized negative publicity, and the general economic downturn in the United States. Then in October 2008, Debtors were approached by an investor from Canada who was going to lend Debtors $10 million. As part of the deal, Debtors had to pay a significant advance fee. Debtors paid said fee on October 28, 2008. Unfortunately, it turned out to be worse than a scam and Debtors lost the advance fee. This incident started possibly the worst publicity imaginable which obviously has affected our businesses and our loan relationships.

Given their current financial situation, the Debtors concluded that it was in the best interest of their creditors and vendors to seek relief under Chapter 11 of the United States Bankruptcy Code.

The Debtors filed their Chapter 11 voluntary petitions for relief (the "Petitions") on March 16, 2009 (the "Petition Date"). The Debtors intend to manage their businesses as Debtors-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

In order to enable the Debtors to operate effectively and avoid the potential adverse effects of a Chapter 11 filing, the Debtors seek certain "first day" relief from the Court.

I submit this Affidavit in support of Debtors' first day applications and motions in this Chapter 11 case. Except as otherwise indicated, all facts set forth in this Affidavit are based upon my experience and knowledge of the Debtors' operations and financial conditions, or upon information and belief. If I were called to testify, I could and would testify competently to the facts set forth herein. I am authorized by the Debtors to submit this Affidavit on their behalf.

Concurrently with the filing of the Petitions, the Debtors have filed, for the Court's approval, a number of Orders (the "First Day Orders") that the Debtors believe are necessary to enable them to operate in Chapter 11 with a minimum of disruption and loss of productivity. The Debtors respectfully request that each of the First Day Orders be entered as a critical element in achieving the Debtors' successful reorganization. A description of the First Day Orders is provided below.

### Debtors' Motion for Entry of an Order Pursuant to Sections 361 and 363 of the Bankruptcy Code Authorizing Interim and Permanent Use of Cash Collateral and Granting Adequate Protection.

The Debtors seek an order authorizing them to utilize Cash Collateral (as that term is described in the Motion) on an emergency interim basis and, thereafter, on a permanent basis, and granting adequate protection to secured creditors with an interest in such Cash Collateral.

One of the Debtors' pressing concerns is the need for the immediate use of Cash collateral pending a final hearing on the Motion. The Debtors require the use of Cash Collateral

4

in order to meet their expenses and maintain the operation of their business. Without the use of Cash Collateral, the Debtors' operations will be substantially and irreparably harmed. The continued operation of the Debtors' business is essential to its operation during this case. In order to avoid immediate and irreparable harm to the Debtors' estate, the Debtors require the use of Cash Collateral to pay, among other things, utilities, taxes, insurance, critical vendors and other ordinary business costs and expenses.

The Debtors' ordinary course operations generate Cash Collateral through the sale of gasoline, food and related items. The Lender (as the term is described in the Motion) asserts a security interest in all of the Debtors' Cash Collateral. As adequate protection for any interest in Cash Collateral which the Lender may have, the Debtors are willing to grant the Lender replacement liens in the Debtors' post-petition Cash Collateral, to the same extent, priority and validity as its pre-petition liens, if any, and only to the extent that the Debtors diminish such Cash Collateral. The proposed replacement liens should provide sufficient adequate protection to prevent any diminution in value to the collateral.

In addition, Nicolet National Bank has also asserted or may assert liens on at least some of the Debtors' Cash Collateral. To the extent that their liens are valid, they are also entitled to receive replacement liens in the Debtors' post-petition Cash Collateral, to the same extent, priority and validity as its pre-petition liens, if any, but only to the extent that the Debtors diminish such Cash Collateral.

The Debtors seek to use Cash Collateral in accordance with their proposed budget (with allowance for a 10% overage on each expense item not to exceed 10% in the aggregate), which will be submitted at the hearing held to consider the relief requested in the Motion for an initial four (4) week period and thereafter upon further order of this Court, following a final hearing on

the Motion, on a permanent basis, in accordance with its operating needs. The Debtors have estimated the amount of cash that they require access to during the next 30 days is $_____.

The Debtors need immediate authority to use Cash Collateral to fund their day-to-day operations so as to preserve the going concern value of the Debtors. I believe that the Debtors' use of Cash Collateral is absolutely essential for the Debtors' continued operations and is therefore in the best interest of creditors and this bankruptcy estate.

### Debtors' Motion Pursuant to Section 366 of the Bankruptcy Code for Entry of an Order: (1) Prohibiting Utilities from Altering, Refusing or Discontinuing Services for Pre-Petition Invoices; (2) Determining That the Utilities are adequately Assured for Post-Petition Payment; and (3) Establishing Procedures for <u>Determining Requests for Additional Adequate Assurance.</u>

The Debtors will seek the entry of an Order (i) prohibiting their utility companies (the "Utility Companies")" from altering, refusing or discontinuing service to the Debtors, (ii) deeming that the Utility Companies are adequately assured of post-petition payment, and (iii) establishing procedures for determining requests by the Utility Companies for additional adequate assurance of payment.

The Utilities currently have on the average a two month security deposit for each of Debtors' accounts. The Debtors propose that this deposit is adequate for the ongoing cases and that no additional deposits should be permitted.

If a Utility Company timely objects to the entry of an order and requests additional adequate assurance which the Debtors believe is unreasonable, the Debtors shall file a motion for determination of additional adequate assurance of payment and notice of such motion for hearing (the "Determination Hearing"). In the event a Determination Hearing is scheduled, the Utility Company shall be deemed to have adequate assurance of payment until the entry of an order finding that the Utility Company is not otherwise adequately assured of future payment under

section 366 of the Bankruptcy Code without the need for payment of additional deposits or other security. The order entered at the Determination Hearing shall fix the amount of any additional adequate assurance payments, if any.

In the normal course of its business, the Debtors uses electricity, water, telephone, and other utility services provided by the Utility Companies. All of these utility services are essential to the safe and efficient operation of the Debtors' businesses. Continuing utility services to the Debtors is essential to their ability to sustain operations while their chapter 11 cases are pending. An interruption of utility services, no matter how brief, would severely disrupt the Debtors' business operations.

The Debtors accordingly, for the reasons stated herein and in each of the first day applications and motions, the Debtors respectfully request that the First Day Orders be approved.

Dated: March 13, 2009

NAOMI ISAACSON
CHIEF EXECUTIVE OFFICER
*U.S. Acquisitions & Oil, Inc.*
*Dr. R.C. Samanta Roy Institute of Science & Technology, Inc.*
*Midwest Oil of Wisconsin, LLC*
*Midwest Oil of Shawano, LLC*
*Midwest Oil of Minnesota, LLC*
*Midwest Properties of Shawano, LLC, and*
*Midwest Hotels & Motels of Shawano, LLC*

SWORN TO AND SUBSCRIBED BEFORE ME
THIS 16th DAY OF MARCH, 2009

_____
Notary Public

DARLENE SENSE
Notary Public
State of Wisconsin